58 CCPA

**AMERICAN STANDARD MERCAN-
TILE CO., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5398.**

United States Court of Customs
and Patent Appeals.

Jan. 21, 1971.

Siegel, Mandell & Davidson, New York
City, attorneys of record, for appellant;
Joshua M. Davidson, Allan H. Kamnitz,
New York City, of counsel.

William D. Ruckelshaus, Asst. Atty.
Gen., Andrew P. Vance, Chief, Customs
Section, John A. Winters, New York
City, for the United States.

Before RICH, ALMOND, BALDWIN,
and LANE, Judges, and McMANUS,
Judge, Northern District of Iowa, sit-
ting by designation.

BALDWIN, Judge.

This appeal is from the decision and
judgment of the Customs Court, Second
Division,[1] overruling the importer's
protest to the collector's classification
of certain rainwear apparel under item
382.81, Tariff Schedules of the United
States (TSUS) as women's, girls' or in-
fants' wearing apparel of man-made
fibers, not ornamented or knit. The im-
porter contends that the merchandise is
properly classified and dutiable under
item 376.50 TSUS as rainwear garments
with a textile-fabric base supporting a

I. 63 Cust.Ct. 446, C.A. 3933 (1969).

rubber or plastics coating or covering on the outer surface of the garment.[2]

The case was submitted to the Customs Court on a representative sample of the merchandise and the following stipulated facts:

That the sample consists of a raincoat of textile materials and plastic.

That the sample has a plastic covering over a rayon material; it has a corduroy collar without a plastic covering; the plastic covering is held in place by means of snap fasteners and by stitching.

That said merchandise is not made from fabric coated or filled with rubber or plastic.

As is evident from the sample itself, the rayon portion is a complete garment or coat which has a covering of translucent plastic sheeting material appropriately cut to fit over the entire external surface area of the coat but for the upper collar surface which has corduroy sewn on it. The plastic material is attached to the top of the coat by a double row of stitching under the collar; to the seam between the coat body and sleeves by sewing; to each sleeve itself by a line of stitching running the length of the sleeve seam as well as by sewing around the cuff circumference; to the pocket area by appropriate sewing around the pocket opening and at the flap; and to the front of the coat by being placed under the periphery of the left and right halves of conventional snap fasteners used to "button" the coat. The plastic is not stitched or otherwise fastened to the bottom of the coat.

In light of the stipulation that the merchandise is not made from fabric coated or filled with rubber or plastics, the issue appears narrowed to whether the article is composed of a textile fabric *base supporting* a plastics *covering* on the outer surface. The Customs Court concluded that the above-described merchandise was not classifiable under item 376.50. Although conceding, in view of the stipulation and dictionary definitions of "cover", that "in a broad sense, the plastic portion of the instant rainwear covers the rayon garment," the court nevertheless felt that the plastic over-garment "does not appear to be the type of covering Congress had in mind when enacting item 376.50." The court's reasons for thus concluding were (1) the rayon textile fabric does not "actually support" the plastic covering, and (2) the language of the tariff schedules and certain items of legislative history establish that:

* * * the type of rainwear intended to be covered by items 376.50–376.58 was that made of a single ma-

2. The pertinent TSUS provisions read:

*Classified under:*
Other women's, girls' or infants' wearing apparel, not ornamented:

 *  *  *  *  *  *  *  *

Of man-made fibers:

 *  *  *  *  *  *  *

382.81 Not knit ........................ 25¢ per lb. + 27.5% ad val.

*Claimed under:*
Rainwear of textile materials and rubber or plastics:

376.50 Garments with a textile-fabric base supporting a rubber or plastics
   coating or covering on the outer surface of the garment .. 12.5% ad val.

It should be observed that the present merchandise was imported in May 1965, prior to the effective date of the Tariff Schedules Technical Amendments Act of 1965, Public Law 89–241, which repealed item 376.50 and substituted the following items:

Garments designed for rainwear, hunting, fishing or similar uses, wholly or almost wholly of fabrics which are coated or filled, or laminated, with rubber or plastics, which (after applying headnote 5 of schedule 3) are regarded as textile materials:

376.54 Of cotton ........................................... 15% ad val.
376.56 Other ............................................. 30% ad val.

terial consisting of a textile fabric coated or similarly covered with rubber or plastics, and not merchandise consisting of an undergarment of one material and an overgarment of another, stitched together.

Turning first to the question whether the instant rayon fabric is a "base supporting" the plastic sheet material, it is perhaps reasonable to conclude, consonant with the government's arguments and considering the somewhat interrelated definitions establishing the common meaning of "base" and "support",[3] that the court below thought the rayon fabric to be neither a "base" nor a "supporting" means for the plastic sheet material.[4] Finding that the word "base" refers "to the lowest part or foundation of something or to the main ingredient or a common element with which other more distinctive elements unite to form a product," and that the word "support" means "to bear the weight of, especially from underneath, hold in position, keep from falling, strengthen," the court determined that:

\* \* \* The textile material in the raincoat before us does not actually support the covering. Both portions are stitched together and hang from the shoulders when worn. Neither bears the weight of nor strengthens the other. \* \* \*

As is evident from the above, the court's opinion that the rayon fabric does not "support" the covering seems to have been predicated solely on its belief that the fabric neither bears the weight of nor strengthens the plastic— a belief it necessarily derived merely from an examination of the representative sample, no testimony or other evidence appearing in the record. It appears to us, contrary to the view expressed below and by the government here, that the rayon fabric constituting a portion of the imported merchandise does function as a "base supporting" the plastic as that expression is employed in item 376.50.

■ Initially, it seems clear that the rayon fabric does act as a carrying material for the plastic overlayer, and that the plastic normally rests on portions of the upper or outer surface of the rayon fabric, thus satisfying those elements of the definition of "base". Insofar as the word "supporting" and the interrelationship of "support" and "base" are concerned, it is no doubt true that the instant plastic material is sufficiently thick and durable that it would be self-supporting or self-sufficient to a degree without the underlying fabric. We conclude, however, from our own examination of the sample that the fabric does add an element or degree of strength to the plastic. It appears manifest, for example, that it would require less force to cut or pierce the plastic alone than it would to cut or pierce the combination

---

3. According to Webster's New International Dictionary, Second Edition (1956), a "base" is

"(1) The bottom of anything, considered as its support; that on which something rests for support; foundation; \* \* \*

(4) (a) \* \* \*

(b) A supporting or carrying ingredient; \* \* \*."

"Supporting" is defined by that authority as "that supports, sustains, props up."

"Support" in turn is defined:

"1. To hold up or in position; to serve as a foundation or prop for; to bear the weight or stress of \* \* \*; also to sustain or carry; \* \* \*."

Funk and Wagnall's New Standard Dictionary of the English Language (1938) defines "base" as

(1.) The lowest or supporting part; that portion of an object on which the remainder rests; \* \* \*.

"Supporting" is defined by Funk and Wagnall's as "Admitting or giving support", while "support" is defined:

(1) To bear the weight of, especially by holding up from underneath; keep from falling; buoy up; uphold \* \* \* Syn: bear, carry, hold up, keep up, maintain, prop, sustain, uphold.

4. Conversely, appellant argues that the Customs Court did not consider the fabric to lack the quality of a "base" within the intendment of item 376.50. The court's opinion is not clear on the point.

of plastic sewn to fabric. It also is apparent that the rayon fabric functions to "prop up" or hold the plastic in a position off from the wearer's shoulders or a coat-hanger, the ultimate supports for such an article of clothing as we have here. In the present case, we think the rayon fabric serves as a "base supporting" the plastic sewn to its outer surface in a comparable manner and to a comparable extent as a fabric would support, or strengthen or bear the weight of, a plastic material adhesively bonded to its outer surface in other types of rainwear classifiable under item 376.50.

In support of its conclusion that the present rainwear, though stipulated to have a "plastic covering over a rayon material," nevertheless does not possess a "covering" within the scope of item 376.50, the court first observed that the term "covering" had been employed in conjunction with the word "coating" in that item. Noting that the term "coating" had been "specifically defined and limited" by Congress,[5] the court went on to find that this fact suggested that "covering" used in conjunction therewith "was not intended to have the broad meaning ascribed to it by general lexicons."[6] In further support of this proposition, the court cited and discussed

(1) certain excerpts from the Tariff Commission Study of November 15, 1960 pertaining to the rainwear provisions in the Tariff Schedules, as well as

(2) subsequent legislative history of item 376.50 as reflected in excerpts from a report of the House Ways and Means Committee accompanying the bill enacted as Public Law 89-241 which repealed

that item, as heretofore noted, to show that:

\* \* \* the kind of apparel contemplated by Congress in the provisions covering rainwear of textile materials and rubber or plastics in items 376.50–376.58 of the tariff schedules as originally enacted and by items 376.54–376.56 of the amended schedules is that composed of a single material, a textile fabric to which a rubber or plastics material has been applied, and not one consisting of separate materials, one of textile fabric and one of plastics, attached to each other by stitching.

The court below did not explain, nor do we understand, how the fact that Congress may have placed an additional limitation on the definition of "coating"— that it "visibly and significantly affect the surface or surfaces" of the fabric on which it is placed "otherwise than by a change of color"—can somehow suggest that "covering" should not be given its ordinary meaning. Congress did not provide a specific definition for, or place additional limitations on, the word "covering" and, in the absence of evidence to the contrary, we think it intended to use that word in accordance with ordinary usage.

With respect to the items of legislative history relied on by the Customs Court, we would ordinarily find no need to consider those items absent patent ambiguity in the statutory language, a condition we find is not present here. See F. L. Smidth & Co. v. United States, 56 CCPA 77, C.A.D. 958 (1969). In any event, we have done so and agree with the importer that the relevant items of legislative history cannot be

---

5. The court cited the following definition appearing in headnote 2 to subpart C, part 4 of schedule 3:
  2. For the purposes of the tariff schedules—
  (a) the term *"coated or filled"*, as used with reference to textile fabrics and other textile articles, means that any such fabric or other article has been *coated* or filled (whether or not impregnated) with gums, starches, pastes, clays, plastics materials, rubber,

flock, or other substances, so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not the color has been changed thereby.

6. As we have already observed, the court otherwise acknowledged that that meaning encompasses the plastic portion of the instant rainwear, a determination with which we agree.

taken as clear evidence of intention to limit the rainwear provided for in item 376.50 to what the Customs Court ambiguously referred to as a "single material", or to only that made of textile fabric having a plastics coating, e. g., adhesively bonded to its outer surface. Suffice it to say that, in our view, the cited legislative history does not purport to be completely definitive or all inclusive of what is or was within the scope of item 376.50, and its language is not so precise as to indicate a Congressional intent contrary to an interpretation of the word "covering" appearing in that item which is in accordance with its common meaning.

The judgment is reversed.

Reversed.